OPINION
{¶ 1} Appellant Jeffrey Hillen appeals from his conviction, in the Fairfield County Court of Common Pleas, for felonious assault and unlawful discharge of a firearm. The relevant procedural facts leading to this appeal are as follows.
 {¶ 2} On September 19, 2003, appellant was indicted on one count of felonious assault, a felony of the second degree, and one count of improperly discharging a firearm into a habitation, R.C. 2923.161(A)(1), also a felony of the second degree. Each count carried with it a firearm specification pursuant to R.C. 2941.145. The indictment stemmed from a shooting incident in Lancaster, Ohio, on the evening of August 25, 2003, as further discussed infra.
 {¶ 3} Appellant pled not guilty to both charges, and the matter proceeded to a jury trial on May 4 through May 7, 2004. On May 10, 2004, the jury returned verdicts of guilty to each count of the indictment with the firearm specifications. In a judgment entry filed September 17, 2004, and in a nunc pro tunc entry filed November 1, 2004, the trial court sentenced appellant to community control for a period of five years, commencing after appellant completed a three-year sentence for the firearm specification on count one of the indictment.
 {¶ 4} Appellant filed a notice of appeal on October 28, 2004. He herein raises the following two Assignments of Error:
 {¶ 5} "I. THE CONVICTION OF DEFENDANT FOR IMPROPER DISCHARGE OF A FIREARM INTO A HABITATION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 6} "II. THE CONVICTION OF DEFENDANT FOR FELONIOUS ASSAULT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 7} The State herein raises the following Assignment of Error on cross-appeal:
 {¶ 8} "I. THE COURT ERRED IN GIVING APPELLANT COMMUNITY CONTROL ON THE UNDERLYING FELONY, A FELONIOUS ASSAULT.
 I. {¶ 9} In his First Assignment of Error, appellant argues his conviction for improper discharge of a firearm into a habitation was against the manifest weight of the evidence. We disagree.
 {¶ 10} Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. See also, State v.Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175,485 N.E.2d 717.
 {¶ 11} The record in the case sub judice reveals that on the afternoon of August 25, 2003, Shawn Johnson, Joe Haigler and Allen Veerasigham were visiting together and drinking beer at Haigler's residence at 510 East Wheeling Street in Lancaster. Haigler, the eventual shooting victim, testified that he drank two pints of whiskey and at least two beers during the day. Tr. at 181. Testimony by other witnesses indicated he drank several more beers, and that he had also taken Xanax pills and smoked marijuana. Tr. at 158, 722. The get-together lasted until dusk. Haigler, who claimed to be depressed about his break-up with his fiancée, became increasingly intoxicated and belligerent. At some point, Haigler and Veerasigham began "wrestling around" and fighting. Johnson also tried to assist in restraining Haigler. Haigler's mother became concerned enough to call 911 for assistance in getting Haigler calmed down.
 {¶ 12} Johnson, who lived nearby at 416 East Mulberry, decided to leave the scene. Johnson's residence was also next door to appellant's. In the meantime, Haigler also left, purportedly to find Johnson. Haigler walked through a church parking lot, located on the northwest corner of North Maple and East Wheeling, and cut through an alley bordering the northern edge of the parking lot. He then proceeded to appellant's back door, apparently mistakenly thinking it was Johnson's residence. Appellant's wife, Vicki Hillen, was awakened at about 10 PM by loud banging at the Hillens' back door. She looked out through the back door, and saw Haigler pounding and kicking at the door, yelling "I'm going to kill you, you son of a bitch." Tr. at 631. Vicki ran to the bedroom and screamed for help. Appellant ran to the back door and braced it with his body. At some point, appellant had Vicki retrieve his personal weapon, a Beretta pistol. Vicki called 911 at 10:11 PM. Tr. at 596. According to appellant, even though he yelled to Haigler that police were on the way, Haigler continued pounding on the door. Tr. at 674. Eventually, Haigler left the Hillens' back porch. Appellant thereupon went outside to further assess the situation. During the ensuing events, as further analyzed in appellant's Second Assignment of Error below, appellant proceeded to the alley behind his house and fired at least three shots, one of which struck Haigler in the upper body.
 {¶ 13} In regard to the improper discharge count presently at issue, appellant stipulated at trial that he had discharged a firearm on the evening of August 25, 2003, and that one of the bullets struck an occupied structure at 206 Maple Street, a permanent or temporary habitation. Tr. at 574-575. Thus the specific question before us is whether the jury's conclusion, that appellant "knowingly" committed an act in violation of R.C. 2923.161(A)(1), was against the manifest weight of the evidence.
 {¶ 14} R.C. 2923.161(A)(1) states that "[n]o person, without privilege to do so, shall knowingly * * * [d]ischarge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual." R.C. 2901.22(B) defines "knowingly" as follows: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 15} Of the spent shells recovered in the case sub judice, appellant testified that one of them resulted from a "[s]traight up in the air" warning shot. Tr. at 692. Another bullet struck the house on Maple Street, while a third hit Haigler, whom appellant was following. The State herein responds that the eyewitness testimony of neighbors Susan Smith and Robert Mullen "show the Appellant's direction of the shot was at such an angle that it would readily proceed into the occupied structure." Appellee's Brief at 4. Our review of the record and exhibits supports the State's assertion. A bullet fired from appellant's position, either down the alley in question or across the north side of the church parking lot, would have traveled in an easterly or southeasterly direction toward the structure in question, which was situated at the corner of Maple Street and the alley.
 {¶ 16} Thus, upon review of the evidence in the case sub judice, we conclude that from appellant's viewpoint, his shots directed at Haigler were made with an awareness that such action would "probably" hit the Maple house, as opposed to being a mere possibility. We therefore hold the jury's verdict under R.C. 2923.161(A)(1) did not lead to a manifest miscarriage of justice, and reversal is not warranted. Cf. State v.Turner, Montgomery App. No. 18866, 2002-Ohio-54.
 {¶ 17} Appellant's First Assignment of Error is therefore overruled.
 II. {¶ 18} In his Second Assignment of Error, appellant argues his conviction for felonious assault was against the manifest weight of the evidence. We disagree.
 {¶ 19} As appellant has never denied firing the shot that struck Haigler, the crux of the issue before us is whether the jury's rejection of appellant's claim of self-defense was against the manifest weight of the evidence. Self defense is a "confession and avoidance" affirmative defense in which the defendant admits the elements of the crime but seeks to prove some additional element which absolves the defendant of guilt.State v. White (Jan. 14, 1998), Ross App. No. 97 CA 2282. The affirmative defense of self-defense places the burden of proof on a defendant by a preponderance of the evidence. In re Collier (Aug. 30, 2001), Richland App. No. 01 CA 5, citing State v. Caldwell (1992), 79 Ohio App.3d 667. To establish self-defense, the following elements must be shown: (1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the defendant must not have violated any duty to retreat or avoid the danger. State v.Robbins (1979), 58 Ohio St.2d 74, 388 N.E.2d 755, paragraph two of the syllabus.
 {¶ 20} At trial, both appellant and Vicki Hillen emphasized in their testimony that Haigler's actions at the door terrified them and caused them great concern for their safety. The transcript of Vicki's 911 call that evening further demonstrates the extreme level of fear she experienced. However, it must be remembered that appellant's assault occurred after Haigler had left the back porch and yard of the Hillen residence. At this juncture, the jury was presented with conflicting versions of what happened in the alley behind the Hillen yard and near the neighboring church parking lot. Appellant asserted that he left Vicki in the house and began following Haigler for identification purposes "at a safe distance." Tr. at 708. He testified that after he had fired his warning shot, "[i]t was clear that [Haigler] was after me and my gun. He was ready to pounce on me, take my gun, turn it on me and turn it on my wife." Tr. at 693. Appellant had followed Haigler over 135 feet through the back yard and more than 40 feet down the alley by this point, although he testified he retreated some of that distance. Appellant claimed he warned Haigler he would shoot, but Haigler kept advancing. Tr. at 714.
 {¶ 21} According to Haigler's testimony, Haigler started running after appellant brought out his gun, and he continued running toward the church parking lot. Tr. at 251. At about the point of entering the lot, he looked behind as appellant came within eight to ten feet of him. Tr. at 253, 257. He then heard about three gun blasts "coming from behind me." Tr. at 258. He collapsed shortly after being struck in the chest.
 {¶ 22} Having reviewed the evidence in the record, we are unable to reach the conclusion that the jury's verdict constituted a manifest miscarriage of justice as to the felonious assault verdict. Haigler, although clearly intoxicated and belligerent, was unarmed, the police were en route, and the original fear of an invasion of the Hillen house had virtually dissipated. Appellant, despite claiming he was in fear of his life, chose to follow Haigler off his property into the darkness, setting in motion a second phase of events culminating in the shooting. We are therefore not inclined to reverse the jury's rejection of the affirmative defense of self-defense.
 {¶ 23} Appellant's Second Assignment of Error is therefore overruled.
 State's Cross-Appeal {¶ 24} In its sole Assignment of Error, the State contends the trial court erred in sentencing appellant to community control in lieu of a term of imprisonment for felonious assault. We disagree.
 {¶ 25} The trial court made the following findings in its sentencing entry:
 {¶ 26} "With respect to the Counts One and Two of the Indictment, the Court has considered the factors in Ohio Revised Code Section 2929.12 and the presumptions in Ohio Revised code Section 2929.13(D). The Court finds that a community control sanction as to both Counts One and Two is appropriate and is hereby imposed because, for the reasons stated herein and on the record: (a) a community control sanction or combination of community control sanctions will adequately punish the Defendant and protect the public from future crime because the applicable factors under Ohio Revised Code Section 2929.12, indicating a lesser likelihood of recidivism outweigh the applicable factors under that section indicating a greater degree of recidivism; and (b) although the Defendant's conduct was serious, the Court, upon further consideration of Ohio Revised Code Section 2929.13(D)(2) finds a community control sanction or combination of sanctions will adequately punish the Defendant because one or more factors under Section 2929.13 of the Ohio Revised Code that indicate that the Defendant's conduct was less serious than conduct normally
constituting the offense are applicable and they outweigh the applicable factors under that section which indicate that the Defendant's conduct was more serious than conduct normally constituting the offense." Judgment Entry, Nov. 1, 2004, at 2, emphasis in original.
 {¶ 27} Upon review, we find no reversible sentencing error under R.C.2929.13(D). The State's sole Assignment of Error on cross-appeal is overruled.
 {¶ 28} For the reasons stated in the foregoing opinion, the decision of the Court of Common Pleas, Fairfield County, is hereby affirmed
Wise, J., Farmer, P.J., and Edwards, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Fairfield County, Ohio, is affirmed.
Costs to be split evenly between appellant and appellee.