[Cite as *State v. Wells*, 2019-Ohio-1276.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO

    Appellee

    v.

TARA WELLS

    Appellant

C.A. No.     18CA0026-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    17CR0608

DECISION AND JOURNAL ENTRY

Dated: April 8, 2019

HENSAL, Judge.

{¶1} Tara Wells appeals her convictions for robbery and felonious assault in the Medina County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2} D. Clark wanted to wire bail money to a friend in California, but could not find his identification card, so he asked Samantha Brown to send it for him. Ms. Brown met him at a store, and he gave her the money. When Ms. Brown got to the front of the line, however, she told Mr. Clark that she had left her identification at her grandmother's house. She gave him his money back and asked him to take her to get it. While they were exiting the store, Ms. Brown ran into a friend and talked to him for a little while. Once outside, Ms. Brown saw her mother, Ms. Wells, in the parking lot and went over to talk to her for a little while as well.

{¶3} After leaving the parking lot of the store in Mr. Clark's truck, Ms. Brown directed him toward her grandmother's house. Because he was driving and had a cast on one of his

hands, Mr. Clark handed his money back to Ms. Brown, who tucked it inside her purse. When Ms. Brown told Mr. Clark that they had reached her grandmother's house, he stopped to let her out. Instead of walking up to the house, however, Ms. Brown began walking up the road. It made him suspicious, so he got out and followed her. Around that time, he noticed a car going slowly down the road. When it reached Ms. Brown, she got into it and told the driver, Ms. Wells, to go.

{¶4} Mr. Clark ran after the car. He forced himself partially through an open back window and began struggling with Ms. Brown. According to Mr. Clark, the friend Ms. Brown had encountered in the store, her brother, and another man were also in the car and tried assisting her. Meanwhile, the car continued down the street, dragging Mr. Clark's feet along the road. When the car finally slowed, Mr. Clark grabbed the purse and rolled away from the car, causing the money to scatter on the ground. As Mr. Clark collected the money, Ms. Brown's brother got out of the car and began attacking him. Mr. Clark hobbled back to his truck and drove to an open field where police found him and took him to a hospital.

{¶5} The Grand Jury indicted Ms. Wells on one count of robbery and two counts of felonious assault. A jury found her guilty of the offenses, and the trial court sentenced her to a total of five years imprisonment. Ms. Wells has appealed, assigning four errors.

II.

ASSIGNMENT OF ERROR I

WELLS' CONVICTION WAS BASED ON INSUFFICIENT EVIDENCE AS A MATTER OF LAW AND THE COURT ERRED BY DENYING WELLS' CRIM. R. 29, MOTION.

{¶6} Ms. Wells argues that the State did not introduce enough evidence to convict her of robbery. Specifically, she argues that there was insufficient evidence to show that she had any

knowledge that a theft offense was being committed. Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In making this determination, we must view the evidence in the light most favorable to the prosecution:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶7}** The jury found Ms. Wells guilty of committing robbery under Revised Code Section 2911.02(A)(2), which provides that "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another[.]" The definition of "[t]heft offense" includes a violation of Section 2913.02, which provides, in relevant part, that "[n]o person, with purpose to deprive the owner of property * * *, shall knowingly obtain or exert control over * * * the property * * * [w]ithout the consent of the owner * * *." R.C. 2913.01(K)(1); R.C. 2913.02(A)(1). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). Recognizing that establishing someone's mental state is "often difficult to prove directly," the Ohio Supreme Court has held that it can "be inferred from the surrounding circumstances." *State v. Logan*, 60 Ohio St.2d 126, 131 (1979).

{¶8}    Ms. Brown testified that, after Mr. Clark called her, she called Ms. Wells and asked her to help take his money.  When she talked to Ms. Wells in the parking lot, she told her to follow Mr. Clark's truck.  After the money fell on the road, the men in the car got out and collected what they could.  The five of them later met at Ms. Brown's friend's apartment and divided the money.  According to Ms. Brown's friend, when they were at his apartment, he heard Ms. Brown and Ms. Wells discussing how they had "hit a lick."  He also observed Ms. Wells helping count out the recovered money.

{¶9}    Upon review of the record, we conclude that, viewing the evidence in a light most favorable to the State, the testimony of Ms. Brown and her friend provided sufficient evidence to convince a rational trier of fact that Ms. Wells knowingly committed a theft offense.  Accordingly, we conclude that there is sufficient evidence to support Ms. Wells' conviction for robbery.  Ms. Wells' first assignment of error is overruled.

ASSIGNMENT OF ERROR II

WELLS' CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE CONSTITUTION.

{¶10}  Ms. Wells next argues that her convictions are against the weight of the evidence.  If a defendant asserts that a conviction is against the manifest weight of the evidence,

an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).  Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side.  *Thompkins*, 78 Ohio St.3d 380, at 387.  An appellate court should only exercise its power to

reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶11} Ms. Wells argues that Ms. Brown's testimony was not credible. She notes that Ms. Brown testified that she had not taken any of her prescribed medicine for months and did not know whether it was affecting her testimony. Ms. Brown admitted that she could not remember some of the details of the day of the robbery because she had used a lot of drugs since then, including methamphetamine just three days earlier. She also admitted that she was hoping to receive some sort of benefit for her testimony.

{¶12} Ms. Wells also argues that the testimony of Ms. Brown's friend was not credible because he had pleaded guilty to an amended indictment, giving him a motive to implicate her. He also admitted that he had lied to the police three times about what happened. Even if his testimony is accepted as true, Ms. Wells notes that Ms. Brown's friend testified that the robbery was not pre-planned and that he had simply gone along to keep Ms. Brown safe from Mr. Clark. He also testified that he never heard anyone in Ms. Wells' vehicle talk about robbing Mr. Clark.

{¶13} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "In reaching its verdict, the jury was in the best position to evaluate the credibility of the witnesses and it was entitled to believe all, part, or none of the testimony of each witness." *State v. Shank*, 9th Dist. Medina No. 12CA0104-M, 2013-Ohio-5368, ¶ 29.

{¶14} Upon review of the record, we note that Ms. Brown did not identify what medication she had been prescribed. She also testified that the only effect of her not taking her medication was that it made her scared. She further testified that, although she had used methamphetamine three days earlier, she was not under its effects at that time. Regarding Ms.

Brown's friend, we note that, although he admitted lying to police, he testified that once they showed him evidence implicating him in the offenses, he decided that he would tell the truth. Accordingly, we cannot say that the jury lost its way when it decided to accept the testimony of Ms. Brown and her friend over the testimony of Ms. Wells. We conclude that this is not the exceptional case in which we should exercise our power to reverse a judgment as against the manifest weight of the evidence. Ms. Wells' second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

WELLS' RIGHT TO A FAIR TRIAL WAS VIOLATED BECAUSE THE TRIAL COURT ALLOWED THE TESTIMONY OF AN INCOMPETENT WITNESS.

{¶15} Ms. Wells next argues that the trial court should not have allowed Ms. Brown to testify because she was incompetent. She argues that, considering Ms. Brown's difficulty remembering things, her mental health issues, and her use of methamphetamine, the court should have at least conducted an in camera interview to determine her competency to testify.

{¶16} Ms. Wells did not object to Ms. Brown's competency during the trial, so she has "forfeited all but plain error[.]" *State v. Cepec*, 149 Ohio St.3d 438, 2016-Ohio-8076, ¶ 67. We note that she has not developed a plain-error argument in her appellate brief, and we decline to construct one for her. *State v. Thomas*, 9th Dist. Summit No. 27266, 2015-Ohio-2935, ¶ 15. Accordingly, we conclude that Ms. Wells has failed to establish that the trial court incorrectly allowed Ms. Brown to testify. Ms. Wells' third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY ON DEFENSE OF OTHERS.

{¶17} Ms. Wells' final argument is that the trial court incorrectly denied her request for an instruction on the defense of others. "A criminal defendant has a right to expect that the trial

court will give complete jury instructions on all issues raised by the evidence." *State v Williford*, 49 Ohio St.3d 247, 251 (1990). "This Court reviews a trial court's decision to give or decline to give a particular jury instruction for an abuse of discretion under the facts and circumstances of the case." *State v. Sanders*, 9th Dist. Summit No. 24654, 2009-Ohio-5537, ¶ 45; *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 152. "An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling." *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶18} "Under Ohio law, self-defense is an affirmative defense." *Williford* at 249. To establish self-defense, the defendant must show: "(1) [she] was not at fault in creating the situation giving rise to the affray; (2) [she] ha[d] a bona fide belief that [s]he was in imminent danger of death or great bodily harm and that h[er] only means of escape * * * was in the use of such force; and (3) [she] must not have violated any duty to retreat or avoid the danger." *State v. Robbins*, 58 Ohio St.2d 74 (1979), paragraph two of the syllabus. "A person who asserts that [s]he was defending another and 'intervenes in a struggle and has no duty to do so, acts at h[er] own peril if the person assisted was in the wrong.'" *State v. Campbell*, 9th Dist. Lorain No. 97CA006973, 1999 WL 492595, *5 (July 14, 1999), quoting *State v. Wenger*, 58 Ohio St.2d 336, 339 (1979).

{¶19} Ms. Wells argues that she was entitled to a defense of others instruction because she, Ms. Brown, and Ms. Brown's friend each testified that, when Mr. Clark pushed his torso through the window of her car, he began punching Ms. Brown. Ms. Wells testified that the car was already moving and that she did not know what to do, she only knew was that her daughter was under attack. Mr. Clark told her that if she slowed down, he would get off, so she stopped

the car. When the car stopped, however, Mr. Clark started punching Ms. Brown again, so she started going again.

{¶20} Although Ms. Wells may have been concerned about her daughter, Ms. Brown admitted that she was at fault for creating the situation by taking Mr. Clark's money. Ms. Wells did not have a greater right to defend Ms. Brown than Ms. Brown had to defend herself. *Wenger* at 340. Accordingly, upon review of the record, we conclude that the trial court exercised appropriate discretion when it declined to instruct the jury on defense of others. Ms. Wells' fourth assignment of error is overruled.

III.

{¶21} Ms. Wells' assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

TEODOSIO, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

WESLEY A. JOHNSTON, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.